```
                 IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

STEPHEN L. REID,                      )
                                      )
                Plaintiff,            )
                                      )
          v.                          )    1:05CV78
                                      )
JO ANNE B. BARNHART,                  )
Commissioner of Social Security,      )
                                      )
                Defendant.            )
```

### RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

This case comes before the Court on plaintiff's motion for summary judgment and defendant's motion for judgment on the pleadings. (Docket nos. 8, 10) Plaintiff filed for disability insurance benefits on May 5, 2003, alleging an inability to work since August 15, 2002, when he would have been 44 years old. (Tr. 60-62) Plaintiff has a high school education. (Tr. 78) The application was denied initially and on reconsideration. (Tr. 36-46) An ALJ then held a hearing at which plaintiff and his wife testified. (Tr. 24-35) The ALJ found that plaintiff was not disabled at any time because he retained the residual functional capacity (RFC) to perform work which existed in significant numbers in the national economy. (Tr. 13-23) This decision became the final decision of the Commissioner on December 23, 2004, when the Appeals Council denied plaintiff's request for review. (Tr. 5-8) This case is therefore ripe for review under 42 U.S.C. § 405(g).

In reaching a decision on plaintiff's claim, the ALJ followed the five-step analysis set out in the Commissioner's regulations. 20 C.F.R. § 404.1520. Under the regulations, the ALJ is to

consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. The burden of persuasion is on the claimant through the fourth step. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education and work experience. Id. The ALJ found in the fifth step that plaintiff had the RFC to perform a wide range of sedentary work. (Tr. 21) He used the Medical-Vocational Guidelines (Grids) to find that plaintiff was not disabled. (Id. at 21-22)

**Scope of Review**

The scope of review by this Court of the Commissioner's decision denying benefits is limited. Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case de novo. Id. The Court may not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ's.

Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

### **Facts and Claims**

Plaintiff claims to be disabled due to knee joints and legs. (Tr. 72) Plaintiff contends that (1) the ALJ's exertional and non-exertional residual functional capacity findings are not supported by substantial evidence, and (2) the ALJ's negative credibility finding is not supported by substantial evidence. (Br. in support of summary judgment at 4-13)

Plaintiff first addresses his non-exertional limitations and contends that his hearing loss in his left ear was such a limitation. (Id. at 7-8) Plaintiff argues that this non-exertional limitation precluded application of the Grids in determining whether he was disabled. See Gory v. Schweiker, 712 F.2d 929, 930 (4th Cir. 1983) (Grids not conclusive when exertional and non-exertional limitations present).

The ALJ found that the plaintiff's hearing loss was a severe impairment, but did not impose any limitations in his RFC as a result of the impairment. (Tr. 18-21) The medical evidence on plaintiff's hearing loss comes from one physician, Dr. Fisher, who

diagnosed chronic otitis media of the left ear with sensorineural hearing loss. (Tr. 95) Dr. Fisher noted that plaintiff had no trouble conversing and spoke at a normal pitch and volume. (Id.) He prescribed Tobradex (ear drops) and recommended a hearing aid consultation. (Id.)

At the hearing held by the ALJ, plaintiff stated that his hearing loss had been present all his life. (Tr. 31) He said that he has a hard time hearing when in a crowd. (Id.) In a setting such as the ALJ's hearing, plaintiff stated that he "can hear pretty good." (Id.) The transcript of the hearing reveals that plaintiff had no trouble hearing the ALJ. Plaintiff said during the hearing that he was supposed to go back to his ear doctor but that they want him to pay $1700 for a hearing aid which he cannot afford. (Id. at 32)

The Court finds that substantial evidence supports the ALJ's finding that plaintiff's hearing loss did not affect his residual functional capacity for sedentary work. It is undisputed that plaintiff has suffered from this impairment since childhood. (Tr. 95 (from age 12)) He has therefore worked at his past jobs such as repairing and delivering appliances, wiring and electrical work, and as a mechanic with this impairment. (Tr. 91) There is no evidence that this impairment hindered his performance of his duties at these jobs which fall in the medium exertional level. (Tr. 21) There also is no evidence that plaintiff's hearing loss has recently increased or his hearing worsened. Therefore, the ALJ reasonably concluded that this impairment posed no significant

-4-

Case 1:05-cv-00078-JAB-RAE   Document 12   Filed 08/07/06   Page 4 of 11

diagnosed chronic otitis media of the left ear with sensorineural hearing loss. (Tr. 95) Dr. Fisher noted that plaintiff had no trouble conversing and spoke at a normal pitch and volume. (Id.) He prescribed Tobradex (ear drops) and recommended a hearing aid consultation. (Id.)

At the hearing held by the ALJ, plaintiff stated that his hearing loss had been present all his life. (Tr. 31) He said that he has a hard time hearing when in a crowd. (Id.) In a setting such as the ALJ's hearing, plaintiff stated that he "can hear pretty good." (Id.) The transcript of the hearing reveals that plaintiff had no trouble hearing the ALJ. Plaintiff said during the hearing that he was supposed to go back to his ear doctor but that they want him to pay $1700 for a hearing aid which he cannot afford. (Id. at 32)

The Court finds that substantial evidence supports the ALJ's finding that plaintiff's hearing loss did not affect his residual functional capacity for sedentary work. It is undisputed that plaintiff has suffered from this impairment since childhood. (Tr. 95 (from age 12)) He has therefore worked at his past jobs such as repairing and delivering appliances, wiring and electrical work, and as a mechanic with this impairment. (Tr. 91) There is no evidence that this impairment hindered his performance of his duties at these jobs which fall in the medium exertional level. (Tr. 21) There also is no evidence that plaintiff's hearing loss has recently increased or his hearing worsened. Therefore, the ALJ reasonably concluded that this impairment posed no significant

limitation.  See Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1970) (longstanding illness not disabling if individual able to work regularly for many years while affected to virtually the same extent as present).  Plaintiff's complaint that the ALJ should not have used the Grids therefore has no basis because there were no non-exertional limitations.

Plaintiff complains that the ALJ assumed the role of a doctor by finding that plaintiff's hearing could be helped by a hearing aid.  However, this is not a situation where the ALJ made a finding contrary to a physician's opinion.  Rather, the ALJ's comment is reasonable given that plaintiff himself said that his physicians wanted him to get a hearing aid.  The ALJ did not assume the role of a physician.  Moreover, even if this comment were deemed improper, it is not significant so as to cause the ALJ's ultimate conclusion not to be supported by substantial evidence.

Plaintiff further complains that the ALJ improperly relied on plaintiff's failure to obtain a hearing aid, because of the cost, as a basis for his RFC finding.  Plaintiff fails to cite to any specific section of the ALJ's opinion which shows that he relied on this failure to make the RFC finding.  The Court cannot find any such reliance by the ALJ.  The ALJ simply noted that the plaintiff's hearing "could be helped by use of a hearing aid," which as noted above was a reasonable conclusion given that plaintiff's physicians were recommending this course of treatment. (Tr. 21)

Turning now to plaintiff's exertional limitations, plaintiff focuses on his right knee problems. Plaintiff underwent two arthroscopic procedures on his right knee to repair meniscus tears which were completed before he had his hearing before the ALJ. (Tr. 30, 111, 144) Dr. Ritchie performed both. (Id.) Plaintiff said during the hearing that he still has pain in the knee, has problems walking distances, but can stand as long as he can move a little bit and has no problems sitting. (Id. at 31, 33) He said that he has had problems with his legs for about eleven years. (Id.) Plaintiff claims the ALJ erred apparently because he did not mention the fact that he relied on Dr. Ritchie's opinion given prior to the second surgery. However, the records for that surgery were submitted to the Appeals Council. In any event, they do not cast doubt on the ALJ's findings and the Appeals Council so found.

Under the regulations, the determination of whether a person is disabled by pain or other symptoms is a two-step process. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). First, there must be objective medical evidence showing the existence of a medical condition or impairment which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. Id. at 594. This does not mean just any pain or some pain, but rather the pain from which plaintiff alleges he or she suffers. Id. Second, and only after the claimant has met the threshold obligation of showing by objective medical evidence of a medical impairment reasonably likely to cause the pain claimed, the

Commissioner must next determine the intensity and persistence of the claimant's pain, and the extent to which it affects the ability to work. Id. at 595. In making this determination, the ALJ may consider the presence or lack of objective evidence of pain, inconsistencies in the evidence, and statements by plaintiff and physicians, in short, all relevant evidence in making an evaluation of the credibility of plaintiff's subjective complaints of pain. Id. at 595-96.

Subjective allegations of severe pain may be discounted when not supported by objective medical evidence and/or supporting medical opinions are made without any testing. Johnson, 434 F.3d at 658. The failure to seek help also constitutes a reason for discounting subjective claims. Id. Finally, the ALJ may discount subjective complaints of pain based on credibility determinations, including evasive, unclear or exaggerating testimony by plaintiff, or at odds with plaintiff's routine activities. Id.

Plaintiff complains that the ALJ relied on Dr. Ritchie's opinion given before plaintiff's second procedure on his knee and that, therefore, the ALJ's decision is not supported by substantial evidence. (Br. at 8-9) However, plaintiff fails to cite any evidence showing that his capacity to work lessened after his second procedure. (Id.) He had before this second procedure complained of aching, stiffness and pain, according to plaintiff. (Br. at 9) Plaintiff complained to Dr. Ritchie after the second procedure of aching, stiffness, and pain in his knee. (Tr. 139) His pain was worse with prolonged standing. (Tr. 138) On May 3,

-7-

2004, plaintiff was said to be temporarily disabled from March 10, 2004 to June 10, 2004. On May 13, 2004, plaintiff was told that strength training was his best option. In September 2004, plaintiff was again reminded of the need for him to exercise. (Tr. 132-139)

In September 2004, which would have been about 6 months after his second procedure, plaintiff saw Dr. Ritchie or his Physician Assistant several times for injections in his knee. The reports show that on September 2 plaintiff was "still quite uncomfortable" and his "pain is worse with prolonged standing." (Tr. 135) On September 16 plaintiff "reports that he is doing well without any problems or complaints." (Tr. 134) On September 23 plaintiff received another injection but there was no note of his condition. (Tr. 133) Plaintiff received another injection on September 30 and the record shows that he "reports that he is doing good without any problems or complaints." (Tr. 132) Therefore, plaintiff has not shown any significant change in his condition for the worse after the second procedure.

The ALJ found that plaintiff could perform a wide range of sedentary work[1] considering his knee problems. (Tr. 22) After plaintiff's first procedure, Dr. Ritchie ordered no prolonged walking or standing. (Tr. 110) The records show that after his

---

[1] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files." 20 C.F.R. § 404.1567(a). It "involves sitting, [and] a certain amount of walking and standing is often necessary in carrying out job duties." (Id.) "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." (Id.)

-8-

second procedure, plaintiff would still have problems with prolonged standing and walking. However, sedentary work would not involve this activity. Therefore, the Court finds that the ALJ's exertional RFC opinion is supported by substantial evidence.

Finally, plaintiff contends that the ALJ erred in his finding that plaintiff's "allegations regarding his limitations are not totally credible." (Tr. 22; Br. at 10-13) Specifically, plaintiff alleges that the ALJ "failed to reach and explicitly state whether or not plaintiff had a condition which could reasonably be expected to produce the pain or other symptoms he alleged." (Br. at 11) Plaintiff assumes that the ALJ was referring to plaintiff's allegations of knee pain. However, it would appear the ALJ was referring to plaintiff's claimed physical limitations and not his pain.

The ALJ considered plaintiff's allegations of exertional limitations first due to knee pain and next due to numbness and pain in both legs. (Tr. 20-21) The ALJ found that "claimant's knee pain would prohibit him from heavy work or strenuous activity." (Tr. 20) It was determined that plaintiff could not perform work where prolonged standing or walking was required. (Id. 21) But the ALJ found that even with these limitations plaintiff could perform sedentary work. (Id.) There would have been no need for the ALJ to consider the effect of plaintiff's knee pain unless he had also found this to be caused by an impairment which exhibited itself by objective medical evidence and which could reasonably cause the pain alleged. Craig, 76 F.3d at 595.

Thus, plaintiff fails to show that the ALJ improperly disbelieved any degree of knee pain in making his RFC determination.

It appears more likely that the ALJ in this comment was referring to plaintiff's allegation at the hearing that he experiences significant pain and numbness in <u>both</u> <u>of</u> <u>his</u> <u>legs</u> which limits his ability to stand and walk. (Tr. 21)  The ALJ found with respect to this that the objective medical evidence failed to show any impairment which would cause these symptoms.  (<u>Id</u>.)  Plaintiff does not challenge this finding.  Because the ALJ found no impairment with respect to the leg pain and numbness, there was no need for the ALJ to examine plaintiff's activities of daily life in this regard.  28 C.F.R. § 404.1529(c).

With respect to plaintiff's knee pain, plaintiff states that the ALJ was required to discuss all of plaintiff's daily activities.  However, the ALJ did not use plaintiff's activities of daily living to find plaintiff not to be disabled or to discount plaintiff's allegations of pain. (Tr. 20)  Plaintiff fails to show that this alleged omission causes the ALJ's decision to lack substantial support.  Plaintiff testified at the hearing that he does not help with household chores but "tries" to mow his lawn with a riding lawn mower.  (Tr. 31)  He does not go to church or grocery shopping.  (Tr. 31-32)  Plaintiff said that he goes fishing but stays on the bank.  (Tr. 32)  Moreover, the most recent medical reports summarized above show that the injections plaintiff was receiving in his knee were helping because in those later reports

plaintiff said he was doing well with no complaints.[2] (Tr. 132-34) Such activities and responses to treatment show that the ALJ's decision is supported by substantial evidence.

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for summary judgment (docket no. 8), be denied and that the Commissioner's motion for judgment on the pleadings (docket no. 10) be granted, and that Judgment be entered dismissing this action.

_____
**United States Magistrate Judge**

August 7, 2006

---

[2] In his brief, plaintiff refers to his complaints before and after his first knee procedure (Br. at 13 citing Tr. 114, 115, 146, 147), rather than the more recent reports after his second procedure.